UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————

|  |  |  |
|---|---|---|
| In re | : | Chapter 7 |
|  | : |  |
| SABA ENTERPRISES, INC., | : | Case No. 05-B-60144 (AJG) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

——————————————————————:

|  |  |  |
|---|---|---|
| JOHN S. PEREIRA, AS CHAPTER 7 TRUSTEE | : |  |
| OF SABA ENTERPRISES, INC., | : |  |
|  | : |  |
| Trustee, | : |  |
|  | : |  |
| v. | : | Adv. Pro. No. 09-1001 |
|  | : |  |
| GRECOGAS LIMITED, GREKA ENERGY | : |  |
| INTERNATIONAL BV, RINCON ISLAND | : |  |
| LIMITED PARTNERSHIP, GREKA OIL & | : |  |
| GAS, INC., GREKA INVESTMENTS, INC. | : |  |
| F/K/A GREKA, CA, INC., SANTA MARIA | : |  |
| REFINING COMPANY, GREKA | : |  |
| INTEGRATED, INC., GREWAL INVESTMENTS,: |  |  |
| INC., GREWAL (ROYALTY) LLC, ALEXI | : |  |
| HOLDINGS LIMITED, ALEXI REALTY, INC., | : |  |
| ALL ROUND MANAGEMENT LIMITED, and | : |  |
| RANDEEP S. GREWAL, | : |  |
|  | : |  |
| Defendants. | : |  |

——————————————————————:

OPINION CONCERNING
DEFENDANTS' MOTIONS TO DISMISS COMPLAINT


A P P E A R A N C E S

JONES & SCHWARTZ, P.C.
One Old Country Road, Suite 384
Carle Place, New York 11514

Attorneys for the Trustee

Jeffrey H. Schwartz, Esq.
Of Counsel


BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202

Attorneys for Defendants
Greka Oil & Gas, Inc., Greka Integrated, Inc., Greka Investments, Inc. f/k/a Greka, CA, Inc., Rincon Island Limited Partnership, Santa Maria Refining Company, and Alexi Realty, Inc.

Carl A. Eklund, Esq.
Of Counsel


STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, NY 10022

Attorney for Defendants
Greka China Limited f/k/a Grecogas Limited and Greka Energy (International) B.V.

Alec P. Ostrow, Esq.
Constantine D. Pourakis, Esq.
Of Counsel


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

Attorneys for Defendants
Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc.

Brian S. Rosen, Esq.
Diane Harvey, Esq.
Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

**FACTS**

Saba Enterprises, Inc. (the "Debtor") was a holding company that owned a number of direct and indirect subsidiaries engaged in business in the oil and gas industry both domestically and abroad.  On November 30, 2005, the Debtor filed a voluntary petition (the "Petition") under Chapter 7 of the Bankruptcy Code (the "Code").  The case before the Court is an adversary proceeding commenced by John S. Pereira, Chapter 7 trustee (the "Trustee") for the Debtor's estate, to avoid pre-petition transfers of the Debtor's direct and indirect ownership in a number of its wholly-owned subsidiaries to certain affiliates of the Debtor.

The Trustee filed the initial complaint (the "Initial Complaint") on January 2, 2008.  After all three groups of defendants (consisting of the sole director of the Debtor, the Debtor's subsidiaries and its other affiliates, as described in further detail in "*Facts Set forth in the Amended Complaint*" below) (the "Defendants") moved to dismiss the Initial Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Trustee filed the proposed amended complaint on April 1, 2009 (hereinafter, "Amended Complaint" or "AC") as an exhibit to his objection to the Defendants' motions to dismiss. The Defendants subsequently filed replies to the Trustee's objection to the motions to dismiss.  The Amended Complaint includes a relatively detailed fact section that was absent in the Initial Complaint and therefore represents an improvement over the Initial Complaint.[1]  *See* AC at ¶¶ 8 - 26.  By filing the Amended Complaint, the Trustee has

---

[1] See "Standard of Review for a FED. R. CIV. P. 12(b)(6) Motion to Dismiss" below for a discussion on the importance of including sufficient factual matter in order for a complaint to withstand a Rule 12(b)(6) motion.

demonstrated the ability to cure some of the pleading deficiencies[2] previously present in

the Initial Complaint, which indicates that it would not be futile for the Court to grant the

Trustee leave to amend the Initial Complaint. *See, e.g.*, *Official Comm. of Unsecured*

*Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R.

721, 746-47 (Bankr. S.D.N.Y. 2009) (granting leave to amend because the plaintiff may

have the ability to cure relevant pleading deficiencies); *cf. Acito v. IMCERA Group, Inc.*,

47 F.3d 47, 55 (2d Cir. 1995) (stating that leave to amend may be denied if such leave

would be futile).  The Court now treats the motions as if they were directed at the

Amended Complaint, thereby implicitly granting the Trustee leave to amend.


   *Facts Set Forth in the Amended Complaint*

   In the Amended Complaint, the Trustee alleges the following relevant facts.  The

Debtor, of which Randeep Grewal ("Grewal") is the sole director, was the 100% owner

of Grecogas Ltd.[3] and Greka Integrated, Inc., among other subsidiaries.  *See* AC at ¶¶ 8,

11.  Grecogas Ltd. owned 100% of Greka Energy International, B.V. (together with

Grecogas Ltd, the "Offshore Subsidiaries"), which owned certain mineral and natural gas

rights in China.  *See* AC at ¶ 12.  Greka Integrated, Inc., the other directly owned

subsidiary in question, owned 100% of the following entities: (1) Santa Maria Refining

Company, which owns an asphalt refining plant in Santa Maria, California; (2) Greka Oil

& Gas Co., which owns and operated numerous oil and gas properties; and (3) Alexi

---

[2] Applicable pleading requirements will be discussed below in the context of an analysis of the facts
pleaded in the Amended Complaint.

[3] In its Reply Memorandum of Law in Support of the Motion by Greka China Limited f/k/a Grecogas
Limited and Greka Energy (International) B.V. to Dismiss Complaint, dated April 15, 2009, counsel for
Grecogas indicates on page 1 thereof that Grecogas Limited is currently known as Greka China Limited.

Realty, Inc. (formerly known as Greka Realty), which owns real property in Santa Maria,
as well as a controlling partnership interest in Rincon Island Limited Partnership
(together with Greka Integrated, Inc., Santa Maria Refining Company, Greka Oil & Gas
Co. and Alexi Realty, Inc., the "Domestic Subsidiaries"), which in turn owned mineral
rights in California. *See* AC at ¶ 13.

  In August 2003, the Debtor was converted in a leveraged going-private
transaction from a publicly traded company to a wholly-owned subsidiary of Alexi
Holdings, Ltd., of which Grewal is also the 100% owner. *See* AC at ¶¶ 8, 13, 14.
According to testimony by Grewal at the Section 341 meeting of creditors, Alexi
Holdings, Ltd. later, on an unspecified date, sold its interest in the Debtor to All Round
Management Limited – an entity that is also a wholly-owned subsidiary of Alexi
Holdings, Ltd. and, as such, also indirectly owned by Grewal – for $1. *See* AC at ¶ 13.
At or around the time of the going-private transaction, the refinery owned by the Debtor
through "it subsidiary," which presumably refers to the asphalt refining plant owned by
Santa Maria Refining Company, was valued at between $180 million and $230 million.
*See* AC at ¶ 15.  On December 31, 2004, an unspecified appraisal estimated the future net
revenue from the oil and gas leases owned by the Debtor through its subsidiaries to be
between $151 million and $362 million. *See* AC at ¶ 17.  On January 1, 2005,
unspecified judgments were entered against the Debtor in the amount of approximately
$19.4 million.[4]  *See* AC at ¶ 18.

---

[4] Counsel for Randeep Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management
Limited and Grewal Investments, Inc. contends that the unspecified judgments were in fact judgments
entered on January 18, 2005, *not* January 1, 2005, against the Debtor in the New Mexico state court in
connection with litigation between Capco Acquisub Inc. and the Debtor.  *See* ¶ 16 of Reply of Randeep S.
Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal
Investments, Inc. to the Chapter 7 Trustee's Objection to Defendants' Motions to Dismiss the Complaint
and Page 18 of Exhibit A (relevant docket sheet) thereof.  The amount of the judgment entered on January

On January 5, 2005, a corporate resolution was signed by Grewal in his capacity

as the sole director of the Debtor, approving (1) the transfer of the Debtor's ownership

interest in Greka Integrated (the Domestic Subsidiary that in turn owns all other

Domestic Subsidiaries) to Grewal Investments, Inc., which is owned by Alexi Holdings,

Limited and (2) the transfer of the Debtor's ownership interest in Grecogas Ltd. (the

Offshore Subsidiary that in turn owns the other Offshore Subsidiary, Greka Energy

International, B.V.) to an unspecified entity.[5]  *See* AC at ¶ 19.  The "alleged"

consideration for the foregoing transfers was "the assignment or cancellation of certain

alleged debts or obligations of the Debtor and its subsidiaries."  AC at ¶ 19.  The Trustee

states upon information and belief that the true value of such debts and obligations was

only a fraction of the value of the transferred assets.  *See* AC at ¶ 20.  The corporate

resolution also provided for the effective date of the above transfers to be backdated to

January 1, 2004.[6,7]  *See* AC at ¶ 21.  The Amended Complaint states further that "[by]

---

18, 2005 is not specified in Exhibit A thereof.  Without any additional facts, it cannot be determined with
absolute certainty whether the judgments mentioned in the Amended Complaint were in fact the same as, or
included, the one entered on January 18, 2005 in the New Mexico state court.

[5] Although not named in the Amended Complaint as the transferee of the Debtor's ownership interest in the
Offshore Subsidiaries, Alexi Holdings Limited has been identified as the transferee in a corporate
resolution of Alexi Holdings Limited attached as an exhibit to a reply filed by certain Defendants' counsel.
*See* Exhibit B, Reply of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round
Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to Defendants'
Motions to Dismiss the Complaint, dated April 15, 2009.  For the relevant text of the resolution, see
footnote 6 below.

[6] In paragraph 17 of Reply of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All
Round Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to
Defendants' Motions to Dismiss the Complaint, dated April 15, 2009, counsel for the relevant Defendants
disputes the Trustee's characterization of the corporate resolution.  Counsel attached as Exhibit B thereto a
copy of a corporate resolution (the "January 6 Alexi Resolution") dated January 6, 2005 (not January 5,
2005, as alleged by the Trustee) signed by Grewal in his capacity as the sole director of Alexi Holdings
Limited (not of the Debtor, as alleged by the Trustee), which states that "the effective date of the [Alexi
Holdings Limited's] acquisition from Greka Energy Corporation [a/k/a the Debtor] **for nominal
consideration** of the entire shareholding in Grecogas Limited is hereby **amended and restated to be
January 1, 2004**" (emphasis added).

The contents of the January 6 Alexi Resolution imply the existence of one or more earlier-dated corporate resolutions approving the asset transfers (or at least the transfer of Grecogas Limited's ownership to Alexi Holdings Limited, the existence of which cannot be disputed given its mention in the January 6 resolution filed by the relevant Defendants) alleged in the Amended Complaint.  As such, it cannot be determined with certainty whether, as alleged by the relevant Defendants, the January 6 Alexi Resolution is in fact the resolution the Trustee attempts to describe in his Amended Complaint or whether the January 5 resolution described in the Amended Complaint is a separate and distinct corporate resolution that was entered into prior to the January 6 Alexi Resolution.  The former scenario would support the relevant Defendants' argument that the Court is not obliged to take the Trustee's factual allegations as true to the extent they relate to the contents of the January 5 resolution described in the Amended Complaint.  *See Brown v. New York City Hous. Auth.*, 2006 WL 1378599, at *1 (S.D.N.Y. May 17, 2006) ("[W]here allegations set out in the complaint are contradicted by . . . material attached to or incorporated by reference in the complaint, the Court is not obligated to credit the allegations in the complaint.").  The latter scenario, however, would render the Defendants' argument largely inapposite, as the allegations set forth in the Amended Complaint could very well relate to a separate and earlier corporate resolution.  The existence of an earlier resolution approving the alleged asset transfers is logically consistent with the existence of the January 6 Alexi Resolution, which re-dates the previously approved transfers.  The January 6 Alexi Resolution contradicts the Trustee's implicit allegation that the same resolution approved both transfers and re-dated one of the two, but this contradiction does not invalidate the thrust of the Amended Complaint – that the voidable transfers described therein in fact did take place prior to the petition date.

Ironically, the substance of the January 6 Alexi Resolution, if considered by the Court on the Rule 12(b)(6) motion, would tend to buttress the Trustee's assertion, as discussed below, that a constructively fraudulent transfer of the Debtor's ownership interest in Grecogas Limited did take place between the Debtor and Alexi Holdings Limited, as the resolution unequivocally states that only **nominal consideration** was paid by the transferee in connection with the relevant transfer.  Assuming that the market capitalization of Grecogas Limited is more than nominal, the fact that only nominal consideration was paid would tend to suggest that the element of the constructive fraud claim relating to inadequate consideration, both under Section 548 of the Code and relevant state law, as discussed below, has been satisfied.

Furthermore, the sole substantive function of the January 6 Alexi Resolution is to re-date the transfer of Grecogas Limited to January 1, 2004, which falls outside the one-year avoidance period from November 30, 2004 to November 30, 2005 applicable to the present case.  *See* 11 U.S.C. § 548 (Comment on Amendments and n. 1, 2009 Collier Pamphlet Edition) (stating that the pre-2005 Amendment avoidance period of one year remains applicable with respect to cases filed before April 21, 2006).  Assuming that the Trustee's Section 548 claims under the Code would otherwise have merit and assuming that the January 6 Alexi Resolution serves no other underlying corporate purpose, the re-dating raises the possibility that the January 6 Alexi Resolution was entered into in order to eschew the applicable one-year avoidance period and to minimize artificially the likelihood of any successful Section 548 claim.

[7] Counsel for the Domestic Subsidiaries and Greka Investments, Inc. f/k/a Greka, CA, Inc. proposes a different theory that contradicts both the assertion made by counsel for Randeep Grewal, as described in footnote 6 above, and the Trustee's characterization of the January 5 resolution in the Amended Complaint. Counsel for the Domestic Subsidiaries et al. states that the January 5 resolution described in the Amended Complaint "appears" to be the same resolution as a resolution entered into by the Debtor (not Alexi Holdings Limited) on January 6, 2005, pursuant to which the Debtor transferred its ownership interest in Greka Investment, Inc. f/k/a Greka, CA, Inc., a wholly-owned subsidiary of the Debtor at such time, to Greka Integrated, Inc., another wholly-owned subsidiary of the Debtor. *See* n. 2, Reply in Support of Motion of Defendants Greka Oil & Gas, Inc., Greka Integrated, Inc., Greka Investments, Inc. f/k/a Greka, CA, Inc., Rincon Island Limited Partnership, Santa Maria Refining Company, and Alexi Realty, Inc. to Dismiss Complaint.  The actual alleged resolution has not been attached as an exhibit.  The alleged existence of yet another resolution entered into on or about January 5, 2005 underscores the possibility that multiple corporate resolutions may have been entered into by the Debtor and/or one or more of its affiliates approving different aspects of the alleged transfers.

virtue of these transfers, the Debtor was left with millions of dollars of unsecured debt . .

. and without assets of any real value," AC at ¶ 22, and that Grewal and the Debtor's

corporate affiliates "walked away with all of the working assets of the Debtor," AC at ¶

23.  The Debtor "did not receive reasonably equivalent value for these transfers," AC at ¶

28.

      The Trustee alleges, upon information and belief, that Grewal formed Green

Dragon Gas "with its major assets the same contracts for mineral and natural rights in

China that he caused to be transferred from the Debtor."  AC at ¶ 25.  As of August 2006,

Grewal owned 95.2 percent of Green Dragon Gas, which had a market capitalization of

$525 million based on the entity's trading value on the London Stock Exchange.  AC at ¶

26.

      Based on the foregoing alleged facts, the Trustee brought the present action

against Grewal and the following corporate entities: the Offshore Subsidiaries, the

Domestic Subsidiaries, Greka Investments, Inc. (f/k/a Greka, CA., Inc.), Grewal

Investments, Inc., Grewal (Royalty) LLC,[8] Alexi Holdings Limited and All Round

Management Limited.

      *Certain Facts Set Forth in the Schedules to the Petition*

      Following the alleged transfers and as of the filing date of November 30, 2005,

the only subsidiaries remaining under the Debtor's ownership – Americas Oil & Gas,

Inc., Saba Petroleum, Inc. and Saba Energy of Texas, Inc. – held interests solely in "non-

incoming producing and dormant, long-term idle wells," some of which were to be

---

[8] Alexi Holdings Limited and Grewal Investments Limited together own 100% of Grewal (Royalty) LLC. *See* Corporate Ownership Statement of Grewal (Royalty) LLC Pursuant to Bankruptcy Rule 7007.1 dated March 2, 2009.

plugged and abandoned pursuant to relevant administrative orders.  *See* Schedule A (Real Property) to the Petition.  At the time of the filing, the Debtor's remaining personal property, valued at approximately $11,428.35, consisted of (1) the Debtor's 100% ownership in the subsidiaries that owned the above-mentioned wells, (2) the salvage value of such wells, (3) the potential recovery value of a judgment, (4) certain unclaimed property with the State of California and (5) a bank account.  *See* Schedule B (Personal Property) to the Petition.  According to the Summary of Schedules included in the Petition, the value of the Debtor's total assets at the time of the filing was $11.428.35.  In contrast, the value of the Debtor's total known liabilities at such time, consisting solely of unsecured non-priority claims, was $24,162,792.12.  *See* Summary of Schedules to the Petition.

According to the Form 7 (Statement of Financial Affairs) filed with this Court, 2003 was the last year in which the Debtor had any income from operations.  *See* Section 1, Form 7 to the Petition.  Total income dwindled from over $3 million in 2003 to $2,636.00 in 2004 and $355.00 in 2005.  *See* Form 7 to Petition at Sections 1 and 2.  The only source of income in both 2004 and 2005 derived from interest.  *Ibid.*  The books and records of the Debtor were last audited in 2003 by BBD Seidman LLP, which implies that the Debtor's financials were not independently audited in 2004 and 2005 before the Debtor filed for bankruptcy.  *See* Form 7 at Section 19.

*Causes of Action*

The Amended Complaint sets forth six causes of action: (1) a corporate veil piercing claim against Grewal, Alexi Holdings Limited (the ultimate holding company in

the Greka corporate structure) and All Round Management Limited,[9] (2) a breach of

fiduciary duty claim against Grewal, (3) a claim for fraudulent transfers based on

constructive fraud under Section 548(a)(1)(B) of the Code, (4) a claim for fraudulent

transfers based on actual fraud under Section 548(a)(1)(A) of the Code, (5) a state law

claim for fraudulent transfers under Section 544(b) of the Code and Section 270 *et seq*. of

the New York Debtor and Creditor Law ("NYDCL") and (6) a turnover of property claim

under Sections 541,[10] 542 and 550 of the Code.

## DISCUSSION

*Standard of Review for a FED. R. CIV. P. 12(b)(6) Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated into

bankruptcy procedural rules by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must

accept as true all factual allegations contained in the complaint and draw all reasonable

inferences in the plaintiff's favor.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152

(2d Cir. 2002); *Campo v. Sears Holdings Corp.*, 2009 WL 2151289 at *3 (S.D.N.Y. July

---

[9] Although the format in which the claims are stated in the Amended Complaint has been preserved herein, the Court recognizes that corporate veil piercing is not an independent cause of action.  *See Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999).  Rather, it is a "procedural device through which a plaintiff may assert facts and circumstances to persuade the court" to impose a subsidiary's obligation on a parent.  *Ibid.*  In *Stratton Oakmont*, a liquidation trustee's constructive fraudulent conveyance claims were the underlying actions to which a reverse veil piercing theory attached.  *See Stratton Oakmont, Inc.*, 234 B.R. at 321.

[10] Section 541 of the Code states in relevant part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: . . . (3) Any interest in property that the trustee recovers under section . . . 550 of this title.

As suggested by the plain language of the statute, the operative provision for a turnover of property claim lies in Section 550 of the Code.  Section 541 of the Code merely clarifies that property recovered pursuant to Section 550 of the Code is part of the estate.  As such, Section 550, instead of Section 541, of the Code will be the focus of the pleading sufficiency analysis of the Trustee's claim for turnover of property.

21, 2009); *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987 at *1 (S.D.N.Y. July 7,

2009); *In re Bally Total Fitness of Greater New York, Inc.*, 2009 WL 1684022 at *1

(S.D.N.Y. June 15, 2009) (quoting *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460

F.3d 296, 298 (2d Cir. 2006)).  In addition to the complaint, the court may also consider

(1) any "document incorporated by reference in the complaint" *Campo*, 2009 WL

2151289 at *3; (2) any document the plaintiff "has in [his] possession or had knowledge

of and upon which [he] relied in bringing suit" *Chambers*, 282 F.3d at 153; *accord*

*Campo*, 2009 WL 2151289 at *3 (indicating that the court may consider, *inter alia*,

"documents integral to and relied upon in the complaint, even if not attached or

incorporated by reference") (internal quotation marks omitted); and (3) "facts of which

judicial notice may be taken,"  *Chambers*, 282 F.3d at 153.

      Federal Rule of Civil Procedure 8(a)(2) on its face requires "a short and plain

statement of the claim" in the complaint showing that the plaintiff is "entitled to relief."

Recent Supreme Court jurisprudence has clarified the standard in evaluating pleading

sufficiency under Rule 8.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127

S.Ct. 1955 (2007); *accord Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009) (providing

guidance on the application of *Twombly*).  In order to survive a Rule 12(b)(6) motion, the

complaint must contain "enough factual matter (taken as true)" to "raise [the] right to

relief above the speculative level," *Twombly*, 550 U.S. at 555; *accord Campo*, 2009 WL

2151289 at *3 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.

2007); *Iqbal*, 129 S.Ct. at 1949).  As such, although "detailed factual allegations" are not

necessary, "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*,

129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555); *accord Willey*, 2009 WL 1938987

at *2 (quoting *Twombly*, 550 U.S. at 555).  Two working principles underlie the standard.

*See Iqbal*, 129 S.Ct. at 1949.  First, the court is not "bound to accept as true [any] legal

conclusion couched as a factual allegation," *Id.,* at 1949-50; *accord Air Atlanta Aero*

*Engineering Limited v. SP Aircraft Owner I, LLC*, 2009 WL 2191318 at *3 (S.D.N.Y.

July 23, 2009) ("[A]llegations that are no more than legal conclusions are not entitled to

the assumption of truth.") (internal quotation marks omitted) (quoting *Iqbal*, 129 S.Ct. at

1950).  Second, "only a complaint that states a plausible claim for relief survives" a Rule

12(b)(6) motion.  *Iqbal*, 129 S.Ct. at 1949-50; *accord Air Atlanta Aero Engineering*

*Limited*, 2009 WL 2191318 at *2 ("In assessing a motion to dismiss under Rule 12(b)(6),

dismissal of a complaint is appropriate if the plaintiff has failed to offer factual

allegations sufficient to render the asserted claim plausible on its face.") (citing *Iqbal*,

129 S.Ct. at 1949); *In re Bally Total Fitness of Greater New York, Inc.*, 2009 WL

1684022 at *1 ("To survive a 12(b)(6) motion to dismiss, the allegations in the complaint

must meet a standard of plausibility.") (internal quotation marks omitted) (citing

*Twombly,* 550 U.S. at 564).  "Judicial experience and common sense" will be required in

determining the plausibility of a claim.  *Iqbal*, 129 S.Ct. at 1950.  The foregoing

construction of Federal Rule of Civil Procedure 8 is intended as a policy matter to weed

out meritless cases prior to the commencement of discovery, thereby minimizing the

expenditure of the judicial system's resources on such cases.  *See Twombly*, 550 U.S. at

559-60.

*Fraudulent Transfers*

      I.      Actual Fraud under Section 548(a)(1)(A) of the Code and Section 276 of
             the NYDCL

The Trustee contends that (1) the transfer of the Debtor's direct and indirect ownership interest in the Offshore Subsidiaries to Alexi Holdings Limited and (2) the transfer of the Debtor's direct and indirect ownership interest in the Domestic Subsidiaries to Grewal Investments, Inc. should each be avoided as an intentional fraudulent transfer under Section 548(a)(1)(A) of the Code and Section 276 of the NYDCL.

Section 548 of the Code states in relevant part that:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within [1][11] year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . ."

Similarly, Section 276 of the NYCDL provides in relevant part as follows:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

If actual intent is adequately pleaded under Section 276, then the relevant claim is deemed sufficiently stated without an independent inquiry into the adequacy of consideration given in connection with a transfer. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005).

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable hereto by Rule 7009 of the Federal Rules of Bankruptcy Procedure, governs the pleading of intentional

---

[11] Under the Code, the pre-2005 Amendment avoidance period of one year remains applicable for Section 548 claims brought in connection with cases filed before April 21, 2006, such as the present case. For cases filed thereafter, the applicable avoidance period is two years. *See* 11 U.S.C. § 548 (Comment on Amendments and n. 1, 2009 Collier Pamphlet Edition).

fraudulent conveyance claims brought under both Section 548 of the Code and Section

276 of the NYDCL.  *See Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp*

*Int'l Corp.),* 493 F.3d 43, 55 (2d Cir. 2005); *In re M. Fabrikant & Sons, Inc.,* 394 B.R. at

733; *In re MarketXT Holdings Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007); *In re*

*Actrade Fin. Techs. Ltd.*, 337 B.R. at 801.  Rule 9(b) states:

> FRAUD OR MISTAKE; CONDITIONS OF MIND.  In alleging fraud or mistake,
> a party must state with particularity the circumstances constituting fraud or
> mistake.  Malice, intent, knowledge, and other conditions of a person's mind may
> be alleged generally.

As such, under Rule 9(b) fraud must be pleaded with particularity.  *See In re M.*

*Fabrikant & Sons, Inc.,* 394 B.R. at 733.  Specifically a party asserting an intentional

fraudulent transfer claim under either the Code and/or the NYDCL must normally allege

(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the

transfer and (3) the consideration paid with respect thereto.  *Id.* (quoting *United Feature*

*Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y.

2002)).  Courts, however, "have taken a more liberal view when examining allegations of

actual fraud that are [pleaded] by a bankruptcy trustee in the context of a fraudulent

conveyance, since a trustee is an outsider to the transaction who must plead fraud from

second-hand knowledge." *In re MarketXT Holdings Corp.*, 361 B.R. at 395 (quoting

*Picard v. Taylor (In re Park South Securities, LLC)*, 326 B.R. 505, 517 (Bankr. S.D.N.Y.

2005)) (internal quotation marks omitted); *see also Am. Tissue, Inc. v. Donaldson*, 351 F.

Supp. 2d 79, 106-07 (S.D.N.Y. 2004); *Nisselson v. Ford Motor Co. (In re Monahan Ford*

*Corp. of Flushing)*, 340 B.R. 1, 21 (Bankr. E.D.N.Y. 2006).  Applying this relaxed

standard for plaintiffs pleading from second-hand knowledge, at least one court has

suggested that the above-described particularity requirement does not need to be met so

long as facts relating to certain "badges of fraud" (enumerated below in connection with
the discussion on the pleading of intent) have been sufficiently alleged.  *See Sullivan v.
Kodsi*, 373 F. Supp.2d 302, 306 (S.D.N.Y. 2005).  In contrast, other courts have found
that the relaxed pleading standard applicable to trustees does not mean that the
particularity requirement is eliminated.  *See Devaney v. Chester*, 813 F.2d 566, 569 (2d
Cir. 1987) (stating that the relaxed standard does not eliminate the particularity
requirement, although the degree of particularity required should be determined in light
of circumstances such as opportunity for discovery, and finding that a complaint
completely lacking in specific facts does not satisfy the relaxed standard); *In re Ahead by
a Length, Inc.*, 100 B.R. 157, 167 (Bankr. S.D.N.Y. 1989) (stating that the particularity
requirement is not eliminated and that even under the relaxed standard, "each defendant
is entitled to be apprised of the nature of his alleged participation in the fraud") (citing
*Devaney*, 813 F.2d at 569 and *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d
1242, 1247 (2d Cir. 1987)).  The particularity requirement for averments of fraud serves
three functions: (1) enabling a defendant to identify the allegedly fraudulent behavior in
order to mount a defense with regard to those actions; (2) protecting the defendant by
prohibiting a complainant from making character-damaging allegations that have no basis
in provable fact; and (3) reducing the number of strike suits.  *See Sullivan*, 373 F.
Supp.2d at 306 (citing *DiVittorio*, 822 F.2d at 1247).

    The Court finds in the present case that the Rule 9(b) particularity requirement
has been met under either interpretation of the relaxed pleading standard applicable to
bankruptcy trustees.  Under the more lenient interpretation adopted in *Sullivan*, the
Trustee has met the requirement by alleging facts supporting the presence of several

15

"badges of fraud," which are discussed in further detail in connection with the pleading

sufficiency of fraudulent intent.  Even under the more stringent interpretation of the

relaxed pleading standard, pursuant to which allegations relating to the relevant transfers

have to be made with some degree of specificity even by the Trustee, the Court finds that

the relevant portions of the Amended Complaint, in conjunction with the corporate

resolution allegedly approving the transfers,[12] arguably meet the particularity requirement

when interpreted in the light most favorable to the Trustee.  Counsel for Grewal, Alexi

Holdings Limited, All Round Management Limited and Grewal Investments, Inc.

concedes as such.[13]  Specifically, the Amended Complaint and the relevant corporate

resolution together identify the property allegedly conveyed, the timing of the

conveyances and the consideration paid.  *See* AC at ¶ 19 (identifying property transferred

as Greka Integrated and Grecogas Ltd. and specifying the approval (and effective) date of

the alleged transfers to be January 5, 2005) and ¶ 20 (stating that the consideration for the

transfers was the assignment or cancellation of certain debts of Debtor and affiliates,

which "was only a fraction of the value of the assets transferred"); Exhibit B (Resolution

of Alexi Holdings Limited) to Reply of Randeep S. Grewal, Grewal (Royalty) LLC,

Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc.

---

[12] In addition to the four corners of the Amended Complaint, the contents of this Exhibit B are also considered on the 12(b)(6) motion.  The identity and number of relevant resolutions are in dispute, however.  See footnotes 5 through 7 of the opinion for the relevant discussion.  Because at the pleading stage, the Trustee's allegations are to be construed in the light most favorable thereto, the Court makes the assumption that the Trustee has correctly identified the corporate resolution until and unless proven otherwise at a later stage of the litigation.  As such, the relevant corporate resolution is deemed to have been properly incorporated by reference into the Amended Complaint.  *See* AC at ¶¶ 19, 21 (incorporating corporate resolution by reference).

[13] *See* Reply of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to Defendants' Motions to Dismiss the Complaint, dated April 15, 2009, at ¶ 15 ("[t]he Trustee *identifies at least two assets* as having been allegedly fraudulently transferred – Greka Integrated and Grecogas Ltd. . . . . – *the dates* on which the [t]ransfers were made, and *the consideration* paid . . . .") (emphasis added).

to the Chapter 7 Trustee's Objection to Defendants' Motions to Dismiss the Complaint, dated April 15, 2009 (stating that Alexi Holdings Limited acquires the Debtor's interest in Grecogas Limited for nominal consideration). In any event, the Court finds that the Amended Complaint has identified the allegedly fraudulent transfers with sufficient particularity such that each relevant Defendant has been apprised of the nature of its or his alleged participation therein and, consequently, would be able to mount a defense with regard thereto.

In contrast to the particularity requirement for pleading fraud under Rule 9(b), the intent element of an intentional fraudulent conveyance claim may be alleged generally so long as the plaintiff alleges "facts that give rise to a strong inference of fraudulent intent," *In re Musicland Holding Corp.*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008) (quoting *Shields v. Citytrust Bankcorp. Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)). A strong inference of fraudulent intent may be established either (1) by alleging facts demonstrating that the Defendants had both the motive and the opportunity to commit fraud <u>or</u> (2) by alleging facts that "constitute strong circumstantial evidence of conscious misbehavior or recklessness," *In re Musicland Holding Corp.*, 398 B.R. at 774 (internal citations omitted); *see also Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir. 1995) (stating in connection with a RICO claim that fraudulent intent may be established by either alleging motive and opportunity or by identifying circumstances indicating conscious behavior by the defendant).[14]

---

[14] Case law requires the plaintiff to plead the transferor's intent only under Section 548(a)(1)(A) of the Code. *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 808 ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code."). In contrast, there is disagreement as to what needs to be pleaded – transferor's intent only or both the transferor's and the transferee's intent – when bringing an intentional fraudulent conveyance claim under Section 276 of the NYDCL. *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 808 ("Case law construing New York law is not entirely clear on

Consistent with the foregoing, in the case of a trustee pleading from second-hand knowledge, allegations of circumstantial evidence are sufficient to establish fraudulent intent.  *See In re MarketXT Holdings Corp.*, 361 B.R. at 396.  In particular, providing facts relating to the "badges of fraud" is a well-established means of alleging intent based on circumstantial evidence, whether or not the trustee is the pleader.  *See In re Sharp Int'l Corp.,* 403 F.3d at 56 ("Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on badges of fraud to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.") (internal citations and quotation marks omitted); *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 639 (2d Cir. 1995) ("Actual fraudulent intent must be proven by clear and convincing evidence, but it may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste or unusualness of the transaction.") (internal citation omitted); *In re MarketXT Holdings Corp.*, 361 B.R. at 396 (suggesting the same in the context of

---

[whether it is the intent of the transferor and the transferee, or just the intent of the transferor that is relevant for purposes of pleading a claim for intentional fraudulent conveyance].");  *In re Andrew Velez Constr., Inc.*, 373 B.R. at 276 (stating that both the intent of the transferor and that of the transferor are needed, but acknowledging Second Circuit case law to the contrary).  Some courts have held that Section 276 simply requires that a plaintiff show intent to defraud on the part of the transferor.  *See e.g. In re Sharp Int'l Corp.*, 403 F.3d at 56 (citing *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n. 5 (2d Cir. 1995)) (stating that to prove actual fraud under Section 276, a creditor must show intent to defraud on the part of the transferor); *Le Café Crème, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*, 244 B.R. 221, 239 (Bankr. S.D.N.Y. 2000) (stating that "it is the intent of the transferor and not that of the transferee that is dispositive."); *In re Manshul Constr. Corp.*, No. 97 Civ. 8851 (JGK), 2000 U.S.Dist. LEXIS 12576 (S.D.N.Y. Aug. 29, 2000)("It is not necessary under DCL § 276 to show fraudulent intent on the part of the transferee.")(citing *Stratton Oakmont, Inc.*, 234 B.R. at 318).  However, other courts have held that the law requires the plaintiff to show intent on behalf of the transferee as well.  *See e.g. In re MarketXT Holdings Corp.*, 361 B.R. at 396 (noting that the debtor "must plead the intent of the transferor (under the Bankruptcy Code) and the intent of the transferor and transferee (under NYDCL)"); *In re Park South Securities, LLC*, 326 B.R. at 517 ("The 'intent' that must be established under section 548(a) is the debtor's actual fraudulent intent; under section 276 of the NYDCL, the Trustee must establish both the debtor's and the transferee's actual fraudulent intent.") (citation omitted).  The Court does not need to decide whether the transferee's intent needs to be alleged under Section 276 of the NYDCL, as the Trustee is permitted to rely on a different and more indirect means, i.e. relevant circumstantial evidence in the form of the "badges of fraud" discussed below, to establish intent for both the Code and the state law claims.

actual fraud claims brought under both Section 548 of the Code and Section 276 of the

NYDCL); *In re Cassandra Group*, 338 B.R. 583, 598 (Bankr. S.D.N.Y. 2006) (stating in

connection with a Section 276 claim that "where certain [b]adges of [f]raud are present,

an actual intent to hinder, delay or defraud either present or future creditors . . . is

presumed.") (internal quotation marks omitted); *cf. Sullivan*, 373 F. Supp.2d at 306

(suggesting that providing facts relating to the badges of fraud is a means of meeting the

particularity, as well as the intent pleading, requirements under Rule 9(b) when pleading

from second-hand knowledge).  The "badges of fraud" on which a trustee may rely

include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
> (6) the general chronology of the event and transactions under inquiry;
> (7) a questionable transfer not in the usual course of business; and
> (8) the secrecy, haste, or unusualness of the transaction.

*In re Actrade Fin. Techs. Ltd.,* 337 B.R. at 809; *see also Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983); *Sullivan,* 373 F. Supp. 2d at 306-07; *In re MarketXT Holdings Corp.*, 361 B.R. at 396.

There is no apparent agreement on whether fraudulent intent may be pleaded

adequately based on the existence of only one badge of fraud.  *Compare In re Cassandra*

*Group*, 338 B.R. at 598 (upholding a Section 276 actual fraud claim based on the

presence of only one badge: inadequate consideration) *with In re MarketXT Holdings*

*Corp.*, 361 B.R. at 396-97 (holding that an actual fraudulent transfer claim fails because,

*inter alia*, the parties' fraudulent intent was insufficiently alleged given the total absence

of such badges except inadequacy of consideration); *In re Actrade Fin. Techs. Ltd.*, 337

B.R. at 809-10 (stating that "[t]he "existence of a badge of fraud is merely circumstantial

evidence and does not constitute conclusive proof of actual intent" and holding an

intentional fraudulent conveyance claim to be insufficiently pleaded based on, *inter alia*,

the absence of any badge of fraud except for one: the presence of questionable

transactions).

        In the present case, however, several badges of fraud are present, and the

existence of several badges of fraud constitutes "clear and convincing evidence of actual

intent," *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 809 (citing 4 L. King, COLLIER ON

BANKRUPTCY ¶ 548.04[2] (15th ed. 1983)); *see also In re Kaiser*, 722 F.2d at 1583

(upholding an intentional fraudulent conveyance claim based on the presence of multiple

badges of fraud, including the retention of use of transferred property, lack of

consideration and the occurrence of the transfer while the debtor was insolvent).  With

respect to the first badge enumerated above, the Amended Complaint, together with the

corporate resolution referenced therein, has alleged inadequate, and in one case nominal,

consideration, in connection with the transfers.  In connection with the second badge,

paragraphs 8 through 11 of the Amended Complaint describe the corporate entities

involved in the transfers as affiliates controlled by a single individual, Grewal.  Such

description clearly establishes a close relationship among the parties.  The Amended

Complaint further alleges that the relevant transfers left the Debtor with debts it had no

way to pay and "without assets of any real value," which facts relate to the fourth badge

of fraud.  AC at ¶¶ 10, 22.  With regards to the fifth badge of fraud, the Amended

Complaint alleges that judgments in the amount of $19.4 million had been entered against

the Debtor several days before the date of the alleged transfers, which suggests that the

Debtor effected the alleged transfers when faced with costly lawsuits.[15]  With regard to

the sixth badge of fraud enumerated above, the general chronology of the alleged

transfers and related events support an inference of actual fraud, as the Amended

Complaint depicts a scheme pursuant to which most of the valuating operating assets of

the Debtor were transferred to two non-filing affiliates thereof within the one-year period

before the Debtor filed for bankruptcy.  Based on the presence of multiple badges of

fraud, the Court finds that the Trustee has adequately alleged the fraudulent intent

element of both actual fraudulent transfer claims.

Because the Trustee has met both the particularity requirement under Rule 9(b)

and the general intent pleading requirement, the Court concludes that the intentional

fraudulent conveyance claims under both Section 548(a)(1)(A) of the Code and Section

276 of the NYDCL have been sufficiently pleaded.  As such, the Court denies the Rule

12(b)(6) motions with respect to the foregoing claims to the extent such motions were

filed by (A) the alleged transferees of the relevant property (i.e., Grewal Investments, Inc.

and Alexi Holdings Limited) or (B) those Defendants that, because of the Court's

decision to allow the corporate veil piercing claim to proceed (as discussed below), face

potential liability as sole director or shareholders of the Debtor-transferor (i.e., Grewal,

Alexi Holdings Limited and All Round Management Limited).  The relevant motions to

dismiss, however, are granted with respect to all other Defendants, who face neither

---

[15] There is some dispute over when the $19.4 million judgments had been entered.  Although the Trustee
alleges that such judgments were entered on January 1, 2005, four days before Grewal approved a
corporate resolution approving the allegedly fraudulent transfers, *see* AC ¶ 18, Defendants' counsel
contends that the unspecified judgments were in fact entered on January 18, 2005, after the alleged
transfers had already been approved.  The amount of the judgments entered on January 18, 2005 is not
specified.  Without any additional facts, the veracity of the Defendants' claim cannot be substantiated with
absolute certainty.  Viewed in the light most favorable to the Trustee, the Court assumes for the purposes of
ruling on pleading sufficiency that the relevant judgments had been entered on January 1, 2005.

transferor liability (by imputation or otherwise) nor transferee liability in connection with

either of the alleged transfers: (1) the Domestic and Offshore Subsidiaries that were

direct or indirect subjects of the alleged transfers: Grecogas Limited, Greka Energy

International BV, Rincon Island Limited Partnership, Greka Oil & Gas, Inc., Santa Maria

Refining Company, Greka Integrated, Inc. and Alexi Realty, Inc., and (2) the remaining

affiliates of the Debtor: Greka Investments Inc. and Grewal (Royalty) LLC.


II.    Constructive Fraud under Section 548(a)(1)(B) of the Code and Sections
       273 to 275 of the NYDCL

The Trustee also alleges that (1) the transfer of the Debtor's direct and indirect

ownership interest in the Offshore Subsidiaries to Alexi Holdings Limited and (2) the

transfer of the Debtor's direct and indirect ownership interest in the Domestic

Subsidiaries to Grewal Investments, Inc. should each be avoided as a constructive

fraudulent transfer under Section 548(a)(1)(B) of the Code and the relevant sections of

the NYDCL

Under Section 548(a)(1)(B) of the Code, a claim for constructive fraudulent

transfer must allege that (a) within one year[16] of the petition date, (b)(1) the debtor

transferred an interest in property, (2) the debtor was (x) insolvent at the time of the

transfer or was rendered insolvent as a result of the transfer, (y) was engaged in business

or was about to engage in business for which the debtor's remaining property constituted

unreasonably small capital, or (z) intended to incur or believed that it would incur debts

beyond its ability to pay as they matured, and (3) the debtor received less than reasonably

---

[16] *See* n. 11 *supra* for an explanation of the duration of the applicable avoidance period.

equivalent value in exchange for the transfer of property. *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 735; *In re Andrew Velez Constr., Inc.*, 373 B.R. at 271.

Similarly, under the NYDCL, the relevant complaint for a constructive fraudulent transfer claim must contain facts demonstrating that (a) the transfer was made without fair consideration; and (b) one of the following: (1) the debtor was insolvent or was rendered insolvent by the transfer (*see* NYDCL § 273); (2) the debtor was left with unreasonably small capital (*see* NYDCL § 274); or (3) the debtor intended or believed at the time that it would "incur debts beyond [its] ability to pay as they mature[d]," *see* NYDCL § 275. *See also In re Sharp Int'l Corp.*, 403 F.3d at 53; *In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 734.

The heightened standard for pleading fraud under Rule 9(b) of the Federal Rules of Civil Procedure does not apply to constructive fraudulent transfer claims. *See In re M. Fabrikant & Sons, Inc.,* 394 B.R. at 735; *In re Andrew Velez Constr., Inc.*, 373 B.R. at 271 (stating that a claim under Section 548(a)(1)(B) of the Code is "based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, and not on the basis of fraud") (internal citation and quotation marks omitted); *In re Actrade Fin. Techs. Ltd.,* 337 B.R. at 801-02 ("Constructive fraudulent conveyance claims do not require proof of fraud. . . ."). As such, allegations relating to such claims are adequate so long as they meet the general pleading standard under Rule 8(a) and "raise a right to relief above the speculative level" *Twombly*, 550 U.S. at 555. The Defendants argue that the Amended Complaint fails to meet the Rule 8(a) standard but the Trustee disagrees.

Even under the more stringent "flexible plausibility" standard recently established in *Twombly*, courts have found in the constructive fraudulent transfer context that the plaintiff does not need to plead specific facts to support the relevant allegations. *See In re M. Fabrikant & Sons, Inc.,* 394 B.R. at 735. In one instance, it was held that the identity of the property transferred to each defendant did not need to be alleged in order to satisfy Rule 8(a); nor were specifics relating to the capacity (i.e., initial transferee, conduit or otherwise) in which each defendant received the relevant property. *See Court-Appointed Receiver for Lancer Mgmt. Group LLC v. 169838 Canada, Inc*., 2008 WL 2262063 at *3 (S.D. Fla. May 30, 2008). In another instance, a complaint that (A) included the aggregate monetary amount that changed hands pursuant to multiple allegedly fraudulent transfers during a multi-year period (without breakdown based on individual transfers), (B) alleged debtors' insolvency (and other relevant financial tests under the NYDCL) generally and (C) pleaded that the debtors did not receive reasonably equivalent value or fair consideration from the transferees was found to be sufficient to state claims for constructive fraudulent transfers under both the NYDCL and Section 548(a)(1)(B) of the Code. *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 736.

In the present case, the Amended Complaint states in connection with the Section 548(a)(1)(B) claim under the Code that the transfers of the Debtor's ownership interest in the Domestic and Offshore Subsidiaries occurred within one year of the petition date. *See* AC at ¶ 50; *see also* AC at ¶ 19 (stating that the relevant transfers were made on January 5, 2005, which is within one year of the petition date of November 30, 2005). It also alleges that the Debtor was insolvent on the date of the transfers and unable to pay its debts as they matured. *See* AC at ¶ 51. The Amended Complaint further alleges that

the Debtor received "less than reasonably equivalent value in exchange for said

[f]raudulent [t]ransfers," AC at ¶ 52.  The foregoing general allegations are supported by

more detailed allegations set forth in the fact section of the Amended Complaint (*see*

*generally* AC at ¶¶ 10-29), the corporate resolution approving the alleged transfers

(which has been incorporated by reference into the Amended Complaint) and the Petition

itself.  Specifically, the relevant documents together depict pre-petition transfers to

certain non-filing affiliates of the Debtor's direct and indirect ownership interest in

Domestic and Offshore Subsidiaries holding revenue-generating property valued in the

hundreds of millions in dollars.  In return the Debtor received less than reasonably

equivalent value, which, in the case of the transfer involving Offshore Subsidiaries,

amounted to nominal consideration.[17,18]  As a result of the alleged subsidiary ownership

transfers, the Debtor became unable to pay its unsecured debts.  *See* AC at ¶ 10.  It was

also either already insolvent at the time of the transfers or was rendered insolvent as a

result thereof, as potentially evidenced by the filing of the Petition itself and as further

evidenced by the fact that, as stated in Form 7 attached to the Petition, its liabilities

exceeded its assets.  *See In re Centennial Textiles, Inc.*, 220 B.R. 165, 173 (Bankr.

S.D.N.Y. 1998) (stating that satisfaction of the balance sheet test, i.e. that the debtor's

liabilities exceed its assets, is sufficient for the purposes of meeting the definition of

insolvency).  Based on the foregoing, the Court finds that the Amended Complaint sets

---

[17] The amount of liabilities held by the Offshore Subsidiaries is unknown, although the amount of known liabilities at the Debtor level was approximately $24 million at the time of the filing, as noted previously. One measure of the net value of the Offshore Subsidiaries would be the market capitalization of Green Dragon Gas (which in 2006, the year after the filing of the Petition, held the Offshore Subsidiaries as its primary assets), which was $525 million during the relevant year, an amount that is by no means nominal. *See* AC at ¶¶ 25-26.

[18] *See* n. 6 *supra* for a discussion of the relevance of the corporate resolution stating that the transfer was effected for nominal consideration.

forth a plausible claim for constructive fraudulent transfers under Section 548(a)(1)(B) of the Code.

Similarly, in connection with the constructive fraudulent conveyance claim under the NYDCL, the Amended Complaint alleges that the relevant transfers were made without fair consideration (1) while the Debtor was insolvent (or thereby rendered the Debtor insolvent), (2) while the Debtor was engaged in a business for which property remaining in its hands after the relevant transfers constituted unreasonably small capital, *or* (3) at a time when the Debtor knew that it would incur debts beyond its ability to pay as they matured. *See* AC at ¶ 65. Because the facts set forth in the Amended Complaint, as described in the immediately prior paragraph, also support an allegation that the subsidiary ownership transfers were made without fair consideration either while the Debtor was already insolvent or causing the Debtor's insolvency, the Amended Complaint more than sufficiently sets forth a claim under the NYDCL for constructive fraudulent conveyances. *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 736 (stating that even conclusory allegations of insolvency and inadequate consideration suffice for the purposes of alleging the elements of a constructive fraudulent transfer claim).

Given that both the Code and the state claims for constructive fraudulent conveyances have been adequately pleaded, the Court denies the Rule 12(b)(6) motions with respect to the constructive fraudulent conveyance claims to the extent such motions were filed by (A) the alleged transferees of the relevant property (i.e., Grewal Investments, Inc. and Alexi Holdings Limited), or (B) those Defendants that, by virtue of the Court's decision to permit the corporate veil piercing claim to proceed (as discussed below), face potential liability as sole director or shareholders of the Debtor-transferor

26

(i.e. Grewal, Alexi Holdings Limited and All Round Management Limited).  The relevant motions to dismiss, however, are granted with respect to all other Defendants, who face neither transferor liability (by imputation or otherwise) nor transferee liability in either of the alleged transfers.  Such other Defendants consist of (1) the Domestic and Offshore Subsidiaries that were direct or indirect subjects of the alleged transfers: Grecogas Limited, Greka Energy International BV, Rincon Island Limited Partnership, Greka Oil & Gas, Inc., Santa Maria Refining Company, Greka Integrated, Inc. and Alexi Realty, Inc., and (2) the remaining affiliates of the Debtor: Greka Investments Inc. and Grewal (Royalty) LLC.

*Corporate Veil Piercing*

In connection with his corporate veil piercing claim, the Trustee alleges that Grewal, individually and through Alexi Holdings Limited (the ultimate parent company of the Debtor and its affiliates) and All Round Management Limited (the direct parent of the Debtor), exercised domination and control over the Debtor and its activities.  *See* AC at ¶¶ 32, 35.  Grewal allegedly "was aware that the Debtor was incurring additional debt while insolvent and that the Debtor was operating while severely undercapitalized."  AC at ¶ 34.  The Trustee asserts that Grewal, Alexi Holdings Limited and All Round Management Limited should be held personally and individually liable for all debts of the Debtor, as the Debtor was merely the alter ego of each of the foregoing Defendants.  *See* AC at ¶ 36.

In order to determine whether, under Rule 8(a) and, if applicable, Rule 9(b) of the Federal Rules for Civil Procedure, the Trustee has sufficiently stated a claim for

27

corporate veil piercing, the Court must first ascertain the applicable state law and, in turn,

the elements of the claim.

I.      Choice of Law Analysis

Generally courts in the Second Circuit have applied the choice of law principles

of the forum state, New York in this case, in order to determine which state's law governs

a veil piercing claim.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995);

*Sonnenblick-Goldman Co., v. ITT Corp.*, 912 F. Supp. 85, 88 (S.D.N.Y. 1996) (stating

that "[p]iercing the corporate veil is a state law claim").  Furthermore, the Second Circuit

has held that bankruptcy courts adjudicating state law claims such as a corporate veil

piercing claim should apply the choice of law rules of the forum state, absent federal

policy concerns.  *See In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001).  Under

New York choice of law principles, the law of the state of incorporation of the

corporation subject to potential veil piercing would govern the claim.  *See Fletcher*, 68

F.3d at 1456 (applying New York choice of law principles and finding that Delaware law

determines whether veil of a Delaware corporation may be pierced in order to impose

tortious liability upon its shareholders); *Sonnenblick-Goldman Co.*, 912 F.Supp at 88-89

(applying Delaware law to claim to pierce Delaware corporation's veil in order to impose

breach-of-contract liability upon its parent); *Alphastar Insur. Group Ltd. v. Arthur*

*Andersen LLP*, 383 B.R. 231, 279 (Bankr. S.D.N.Y. 2008) (applying Bermuda law to

pierce Bermuda debtor's veil, thereby making certain parent entities' assets available to

satisfy debtor's liabilities).  Because the Debtor was incorporated in Colorado, Colorado

state law would govern the corporate veil piercing claim if this Court follows the *Fletcher*

line of cases.

In contrast, a separate line of cases beginning with *Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 137 (2d Cir. 1991) has applied substantive New York state law to veil piercing claims. *See e.g., Quinn v. Teti*, 234 F.3d 1262, 2000 WL 1616806, *2 (2d Cir. Oct. 27, 2000); *Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 2006 WL 2707335, *4 (S.D.N.Y. Sept. 20, 2006); *Wausau Business Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001). The *Passalacqua* case involved an attempt to pierce the corporate veils of certain entities that were parties to a contract to build a hotel in Florida. *See Passalacqua Builders, Inc.*, 933 F.2d at 133. Sitting in diversity, the *Passalacqua* court began the relevant inquiry by applying a multi-factor "interest analysis" pursuant to New York choice of law principles but found the relevant parties' mutual assumption "from the outset that New York law govern[ed]" to be the determining factor. *Passalacqua Builders, Inc.*, 933 F.2d at 137 (citing *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 52 (2d Cir. 1984) for the proposition that under New York law, "parties to litigation may consent by their conduct" to the law to be applied "in the absence of a strong countervailing public policy"). In addition the *Passalacqua* court found that, in any event, the veil piercing law in Florida, the only other state with significant contacts to the contractual dispute, was "virtually identical" to New York law.[19] *See Passalacqua Builders, Inc.*, 933 F.2d at 137. Based on the foregoing, the court concluded that New York law applied to the veil piercing claim at issue. *Ibid.*

In *Quinn*, the court noted that "the law of the state in which a corporation is incorporated governs attempts to pierce the corporate veil" but nevertheless applied New

---

[19] It cannot be ascertained from the opinion in *Passalacqua* whether the corporate entities subject to the veil piercing claim were incorporated in Florida.

York law to analyze the claim, reasoning that the same result would follow regardless of

the law applied. *Quinn*, 2000 WL 1616806 at *2. In *Network Enterprises*, a case

involving an alleged contractual breach against a corporation, the court also

acknowledged that the law of the state of incorporation would normally govern a veil

piercing claim to impose personal liability on the corporation's president. *See Network

Enterprises, Inc.*, 2006 WL 2707335 at *4. The *Network Enterprises* court, however,

pointed out that the relevant contract was to be governed by New York state law in

accordance with the choice of law provision set forth therein. *Ibid.* The court then

concluded that it was not erroneous in its prior related opinion to extend the designation

of New York law as the governing law to the issue of veil piercing. *Ibid.* Furthermore,

the court reasoned that even if the application of New York law were wrong, the same

result would have been achieved even if the court had applied the law of the state where

the defendant corporation was incorporated. *See Network Enterprises, Inc.*, 2006 WL

2707335 at *5. In *Wausau*, the court similarly cited the general principle that the law of

the state of incorporation governs a veil piercing claim based on New York's choice of

law rules but declined to follow such principle in the breach-of-contract case. *See

Wausau Business Ins. Co.*, 141 F. Supp.2d at 416-17. The *Wausau* court noted that both

parties to the litigation cited the *Passalacqua* case for the proposition that New York law

would apply to the claim (1) if both parties had agreed to employ New York law by

briefing the issue only under New York law and (2) if the standards for veil piercing were

"virtually identical" under New York law and the law of the state of incorporation. *See

Wausau Business Ins. Co.*, 141 F. Supp.2d at 417. Although in *Wausau* the disputed

contract did not contain a choice of law provision, unlike the relevant contract in *Network

*Enterprises*, the *Wausau* court noted that both the first and second conditions set forth immediately above had been satisfied and, as such, applied New York law to the veil piercing claim. *Ibid.*

Based on the *Passalacqua* line of cases, in order to determine whether New York substantive law should be applied to the Trustee's veil piercing claim, this Court would need to examine (a) whether the standards for veil piercing are virtually identical under New York law and Colorado law (i.e., the law of the state of incorporation of the Debtor), such that the same outcome would result from the application of either state's law and (b) if the standards were virtually identical under both states' laws, whether the Trustee and the relevant Defendants had explicitly or implicitly agreed, by briefing the veil piercing claim solely under New York law or otherwise, to apply New York law to the claim.

Under New York law, courts may pierce the corporate veil *either* in the event of a fraud *or* "where the corporation has been so dominated by an individual or corporate parent that the subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego," *Wausau Business Ins. Co.*, 141 F. Supp. 2d at 417; *accord Passalacqua*, 933 F.2d at 138; *but see Stratton Oakmont, Inc.*, 234 B.R. at 322 (stating that piercing the corporate veil requires "a showing that the parent corporation dominates the subsidiary to such an extent that the latter is really an agent for or instrumentality of the former *and* the parent corporation used that control to commit fraud or some other wrong that injured the party seeking to pierce the veil") (emphasis added) (citing, *inter alia*, *Passalacqua,* 933 F.2d at 137-38).  Ten factors may be considered in determining the sufficiency of parent domination over the subsidiary: (1) absence of corporate formalities and paraphernalia; (2) inadequate capitalization; (3) movement of funds for personal rather than corporate

31

purposes; (4) overlap in ownership, officers, directors and personnel; (5) common office

space and contact information; (6) limited amount of business discretion exercised by the

subsidiary; (7) lack of arms' length dealings between the parent and the subsidiary; (8)

failure to treat the relevant entities as independent profit centers; (9) payment or

guarantee of the subsidiary's debts by the parent; and (10) use by the parent of the

subsidiary's property as if the property were owned by the parent. *See Passalacqua*, 933

F.2d at 139; *Wausau Business Ins. Co.*, 141 F. Supp. 2d at 418. The analysis of parent

domination is a fact-intensive inquiry, and no one factor listed above is dispositive. *Ibid*.

Under Colorado law, in contrast, a three-prong analysis applies to a corporate veil

piercing claim. First, it must be determined whether the corporation in question is a mere

alter ego of the shareholder/parent. An alter ego relationship exists when the corporation

is a "mere instrumentality for the transaction of the shareholder's own affairs, and there is

such a unity of interest in ownership that the separate personalities of the corporation and

the shareholder no longer exist." *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006) (quoting

*Krystkowiak v. W. O. Brisben Co., Inc.*, 90 P.3d 859, 867 n.7 (Colo. 2004)); *Sheffield*

*Services Co. v. Trowbridge*, 2009 WL 1477003 at *11 (Colo. App., May 28, 2009).

Eight factors, although not all-inclusive, are generally considered in the alter ego

analysis: (1) failure to operate the subsidiary as a distinct business entity; (2)

commingling of funds and assets; (3) maintenance of inadequate corporate records; (4)

facilitation of insider misuse by the nature and form of the entity's ownership and

control; (5) inadequate capitalization; (6) use of the entity as a mere shell; (7) disregard

of legal formalities by the parent/shareholder; and (8) use of corporate funds or assets for

non-corporate purposes. *See Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152,

1156-57 (D. Colo. 1990); *In re First Assured Warranty Corp.,* 383 B.R. 502, 527 (Bankr.

D. Colo. 2008); *In re Phillips*, 139 P.3d at 644; *Leonard v. McMorris*, 63 P.3d 323, 330

(Colo. 2003).  No one factor is dispositive in the analysis.  *See Newport Steel Corp.*, 757,

F. Supp. at 1156.  The above eight factors are similar, although not identical, in substance

to the ten factors required under New York law to establish the analogous alter ego prong

of the veil piercing analysis.  Under the second prong of the analysis, the court must

determine whether "justice requires recognizing the substance of the relationship between

the shareholder[/parent] and corporation over the form because the corporate fiction was

used to perpetrate a fraud or defeat a rightful claim," *In re Phillips* at 139 P.3d at 644

(internal quotations omitted) (quoting *Contractors Heating & Supply Co. v. Scherb,* 432

P.2d 237, 239 (Colo.1967)); *accord Sheffield Services Co.*, 2009 WL 1477003 at *15.

Under the third prong, the court must evaluate whether equity "will be achieved by

disregarding the corporate form" of the subsidiary and holding the shareholder/parent

individually liable for the acts of the subsidiary.  *In re Phillips*, 139 P.3d at 644; *accord*

*In re First Assured Warranty Corp.,* 383 B.R. at 527; *Sheffield Services Co.*, 2009 WL

1477003 at *16.

        The preponderance of Colorado state case law indicates that all three prongs of

the foregoing analysis must be satisfied in order to establish a veil piercing claim.  *See In*

*re Phillips,* 139 P.3d at 644; *Scherb,* 432 P.2d at 239 (suggesting that a showing of fraud

is required for veil piercing); *Sheffield Services Co.,* 2009 WL 1477003 at *16 (stating

that the plaintiff must show by clear and convincing evidence that each prong has been

met); *but see Micciche v. Billings*, 727 P.2d 367, 373 (Colo. 1986) (stating that "if it is

shown that shareholders used the corporate entity as a mere instrumentality for the

transaction of their own affairs without regard to separate and independent corporate existence, or for the purpose of defeating or evading important legislative policy or in order to perpetrate a fraud or wrong on another, equity will permit the corporate form to be disregarded and will hold the shareholders personally responsible for the corporation's improper actions") (emphasis added).  In contrast, as discussed above, New York state law for veil piercing merely requires either a showing of shareholder/parent domination resulting in an alter ego relationship or a showing of fraud.  Because the standards for veil piercing are not "virtually identical" under Colorado law and New York law, the Court cannot follow *Passalacqua* and apply the substantive law of the forum state, New York, to the Trustee's veil piercing claim, as did the courts in *Wausau*, *Network Enterprises* and *Quinn*.  There is no need to examine the conduct of the party-litigants in the present case for any indication of an implied agreement by the parties to apply New York substantive law to the claim (for example, by determining whether the parties have relied solely on New York law in their briefs[20]) because both conditions under *Passalacqua* – i.e., (1) that the standards under both states' laws be virtually identical and (2) that the parties' conduct imply an agreement to employ the substantive law of the forum state – must be satisfied for New York substantive law to apply to the veil piercing

---

[20] Even if the standards for evaluating a veil piercing claim were deemed to be virtually identical under Colorado law and New York law, Colorado law would still apply in evaluating the claim.  This is so because there is no indication in the parties' briefs that they relied solely on New York law in briefing the claim.  Quite to the contrary, Trustee's counsel did not refer to either Colorado or New York law in briefing the claim, *see* AC at ¶¶ 31-37, and the relevant Defendants' counsel relied solely on Colorado law in briefing the claim, *see* Notice of Motion of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc. for An Order Dismissing Complaint dated March 2, 2009 at ¶ 21-25; Reply of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to Defendants' Motions to Dismiss the Complaint dated April 15, 2009 at ¶ 11.

claim.  Given the foregoing analysis, the pleading sufficiency of the corporate veil claim

will be evaluated within the framework set forth under Colorado law.

     II.    <u>Evaluation of Pleading Sufficiency for the Veil Piercing Claim</u>

     To the extent that the Trustee's allegations related to the veil piercing claim

involve fraud, they must satisfy the heightened standard for pleading fraud under Rule

9(b) of the Federal Rules of Civil Procedure; otherwise, the post-*Twombly* "flexible

plausibility" standard under Rule 8(a) of the Federal Rules of Civil Procedures governs

the determination of the sufficiency of the Trustee's pleading.  *See Stratton Oakmont,

Inc.*, 234 B.R. at 323 n. 22 (stating in connection with a reverse piercing claim that

allegations involving fraud must comply with Rule 9(b), while Rule 8(a) governs other

relevant allegations).

     As stated above in connection with the choice-of-law analysis for the veil piercing

claim, an eight-factor test applies to the first prong of the veil piercing analysis under

Colorado law.  With regard to the first, second, third, seventh and eighth factors, the

Amended Complaint does not include any relevant allegations.  Specifically, it cannot be

discerned from the Amended Complaint if (with respect to the first factor) the Debtor

failed to operate as a distinct business entity; (with respect to the second factor) if any of

the Debtor's funds or assets had been commingled with those of Grewal, Alexi Holdings

Limited and/or All Round Management Limited; (with respect to the third factor) if the

corporate records of the Debtor, such as minutes of board meetings, were inadequately

maintained; (with respect to the seventh factor) if legal formalities necessary to maintain

the corporate status of the Debtor had been disregarded; or (with respect to the eighth

factor) if the Debtor's corporate funds or assets had been diverted for non-corporate

purposes.

      In contrast, with respect to the fourth factor under the alter-ego analysis, the

Amended Complaint describes the corporate Defendants as a closely affiliated web of

entities, each of which was directly or indirectly controlled by Grewal.  *See* AC at ¶¶ 8, 9,

11-13, 19, 31-32.  Grewal was the sole director of the Debtor and, as such, had the power

to approve transactions entered into by the Debtor, such as the alleged transfers, without

any check-or-balance mechanism at the board level.  *See* AC at ¶ 19.  Furthermore,

Grewal was also the sole director of Alexi Holdings Limited, the ultimate parent in the

organizational structure.  *See* Exhibit B (Resolution of Alexi Holdings Limited) to Reply

of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round

Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection

to Defendants' Motions to Dismiss the Complaint, dated April 15, 2009 (listing Grewal

as the sole director).  As such, Grewal was in a unique position to approve and deny all

types of corporate transactions entered into by the Debtor, Alexi Holdings Limited (such

as the alleged fraudulent transfer of ownership interests in the Offshore Subsidiaries from

the Debtor to Alexi Holdings Limited) and by each of its wholly-owned subsidiaries

(including Grewal Investments, Inc., the alleged transferee in connection with the

ownership transfer of the Domestic Subsidiaries).  Given the foregoing, the Trustee has

pleaded enough facts to support the presence of the fourth factor: that the nature and form

of the entity's ownership and control facilitate insider misuse.  *Cf. In re First Assured*

*Warranty Corp.*, 383 B.R. at 528 (stating that the fourth factor is present because the

relevant entities shared a common controlling shareholder and were "supervised, managed and controlled by the same officers and directors").

With respect to the fifth factor, the Amended Complaint states that "the Debtor was operating while severely undercapitalized," AC at ¶ 34.  The fact section of the Amended Complaint supports this allegation by detailing a scheme pursuant to which valuable assets of the Debtor, in the form of those subsidiaries with value-generating operations as opposed to abandoned oil wells, were siphoned off to either Alexi Holdings Limited, its ultimate parent, or a sister affiliate owned by Alexi Holdings Limited prior to the filing of the Petition, thereby leaving the Debtor undercapitalized.  *See* AC at ¶¶ 8 - 30.  At least with respect to the transfer of the Offshore Subsidiaries, the Debtor received nominal consideration in exchange for all the assets held by the Offshore Subsidiaries.  *See* Exhibit B (Resolution of Alexi Holdings Limited) to Reply of Randeep S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to Defendants' Motions to Dismiss the Complaint, dated April 15, 2009.   Similarly, with respect to the sixth factor, the Amended Complaint alleges that the Defendants "engaged in . . . little more than a shell game. . . by which substantially all of the assets of the Debtor were conveyed, at the direction of Grewal, to, by and between" the Defendants.  AC at ¶ 10.  Construed in the light most favorable to the Trustee, the Court interprets this as an allegation that at least during the one-year period prior to the filing, the Debtor was used as a mere shell for the fraudulent transfers described in the Amended Complaint.

As stated previously, no single factor in the alter-ego analysis is dispositive.  In fact, the presence of merely one out of eight factors under the alter-ego prong of the

Colorado veil piercing analysis has in some cases been held to be insufficient for the purposes of veil piercing, especially if there has been no allegation of fraud.  *See In re First Assured Warranty Corp*., 383 B.R. at 527-28 (finding that the corporate form of the relevant entity should not be disregarded under Colorado law given that only one out of eight factors in the alter-ego analysis was present and given that there has been no assertion that the alleged corporate fiction was used to "perpetrate a fraud" or "otherwise defeat a rightful claim"); *Newport Steel Corp*., 757 F. Supp. at 1157 (finding that the presence of the fifth factor – undercapitalization – alone did not justify veil piercing and stating that the record in the case did not reflect use of the entity "to perpetrate a fraud or wrong").  In the presence case, in contrast, three out of the eight factors are present.  Moreover, the Amended Complaint alleges that the corporate form of the Debtor was used to perpetrate fraud.  *See* AC at ¶¶ 19 - 20, ¶¶ 55 - 70.  Based on the foregoing, the Court finds the alter-ego prong of the Colorado veil piercing analysis to be satisfied.

Under the next prong of the analysis, the Court must determine whether, on the face of the Amended Complaint and other documents permitted to be considered on a Rule 12(b)(6) motion, justice requires recognizing the substance, as opposed to the form, of the relationship between the Debtor, on one hand, and Grewal, Alexi Holdings Limited and All Round Management Limited, on the other hand, because the alleged corporate fiction was used to perpetrate a fraud.  As stated above, the Amended Complaint includes allegations of intentional fraudulent transfers effected by Grewal through the Debtor and its affiliates.  In addition, it has been determined under the intentional fraudulent conveyance analysis detailed above that the allegations included in the Amended Complaint meet the heightened pleading standard set forth under Rule 9(b) of the Federal

Rules of Civil Procedure for pleading fraud.  Given the foregoing, the Court concludes

that the second prong of the veil piercing analysis has also been satisfied.  *Cf.*

*Contractors Heating and Supply Co.*, 432 P.2d at 238-39 (finding "a total absence of"

fraud and declining to pierce the corporate veil).

Under the third and last prong of the Colorado veil piercing analysis, the court

must evaluate whether, assuming all well-pleaded allegations set forth in the Amended

Complaint to be true, piercing the corporate veil of the Debtor, All Round Management

and Alexi Holdings Limited and holding each of All Round Management, Alexi Holdings

Limited and Grewal individually liable for the allegedly fraudulent transfers will lead to

an equitable result.  Generally, if "adherence to the corporate fiction would promote

injustice, protect fraud, defeat a legitimate claim, or defend crime, the invocation of

equitable principles for the imposition of personal liability may occur."  *Sheffield*

*Services Co.*, 2009 WL 1477003 at \*16 (quoting *LaFond v. Basham*, 683 P.2d  367, 369-

70 (Colo. App. 1984)).  In the present case, upholding the corporate fiction of the Debtor,

Alexi Holdings Limited and All Round Management would prevent the imposition of

personal liability on Grewal, who, as the direct and indirect sole director/shareholder of

each entity involved, approved and allegedly orchestrated both transfers in question.

Imposing individual liability merely upon one or more corporate entities would thwart

equity in that the actual perpetrator of the alleged fraud may be able to transform the

corporate entity or entities faced with legal liability into shells left with little or no

valuable assets and escape unscathed himself.  *Cf. Sheffield Services Co.*, 2009 WL

1477003 at \*16 ("[T]o allow a director to hide behind the cloak of the corporation would

promote injustice in that it would allow the actions of a director who used assets of a

corporation for his personal gain to defeat the valid claim of a creditor.")  Based on the

allegations set forth in the Amended Complaint, it is not uncommon practice for assets to

be transferred from one affiliate in the Greka organizational structure to another for less

than reasonably equivalent consideration and thereafter, at least in the case of the Debtor,

for the affiliate with depleted assets to file for bankruptcy, especially also when faced

with multiple lawsuits.  *See* AC at ¶ 13 (stating that Alexi Holdings Limited sold its

100% interest in the Debtor to All Round Management Limited for $1).  Given the

foregoing, the Court finds that piercing the corporate veil of the Debtor, Alexi Holdings

Limited and All Round Management would lead to an equitable result and, as such, the

third prong of the Colorado veil piercing analysis has been satisfied.  Because all three

prongs of the analysis have been satisfied under the assumption that the allegations

supported by sufficient factual matter in the Amended Complaint are true, the Court

concludes that the Amended Complaint sets forth a plausible veil piercing claim and

declines to dismiss the Rule 12(b)(6) motion with respect to the veil piercing claim.


*Breach of Fiduciary Duty*

The Trustee alleges that as a controlling shareholder (through Alexi Holdings

Limited), officer and sole director of the Debtor, Grewal owed the Debtor and its

creditors fiduciary duties of due care, loyalty and fair dealing and that Grewal breached

such duties through his participation in the fraudulent conveyances described in the

Amended Complaint.  *See* AC at ¶¶ 38 - 44.  Under New York state choice of law

principles, the law of the state of the Debtor's incorporation, Colorado law, governs this

claim.  *See In re BP P.L.C. Derivative Litig.*, 507 F. Supp. 2d 302, 307-11 (S.D.N.Y.

2007) (applying the law of the state of incorporation of defendant to claim for breach of
fiduciary duty pursuant to the internal affairs doctrine); *In re Ticketplanet.com*, 313 B.R.
46, 62 (Bankr. S.D.N.Y. 2004) (stating that under New York choice of law principles, the
law of the state of debtor's incorporation governs an allegation of breach of fiduciary
duty owed to a corporation and proceeding to apply the law of the state of debtor's
incorporation to such claim brought by trustee); *see also In re Gaston & Snow*, 243 F.3d
at 601-02 (holding that a bankruptcy court hearing state law claims that do not implicate
federal policy concerns should apply the choice of law rules of the forum state).

Under Colorado law generally, the elements of a claim for breach of fiduciary
duty are: "1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he
breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4)
that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages,"
*Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).
Given the above, the Amended Complaint must include sufficient factual matter to
support each of the four foregoing elements, thus giving rise to a plausible claim under
the *Twombly* standard.[21]  Furthermore, because the claim for breach of fiduciary duty is
premised upon intentional fraudulent transfers,[22] clearly a form of fraud, the relevant

---

[21] The Amended Complaint does not specify the elements of the claim for breach of fiduciary duty under
Colorado law.  It also does not indicate that Colorado law alone applies.  Nevertheless, the Trustee's failure
to cite applicable law does not affect the Court's assessment of the claim at the pleading stage; the
sufficiency of factual allegations alone matters.  *See Stratton Oakmont, Inc.*, 234 B.R. at 329 (quoting
*Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988)).

[22] Although the Trustee's allegation of Grewal's breaches of duties of due care and loyalty are not on their
face premised upon fraudulent conduct, a fair and reasonable reading of the Amended Complaint provides
no factual basis for the Trustee's claim other than the fraudulent transfers allegedly orchestrated by various
corporate entities owned directly or indirectly by Grewal.  *Cf. Official Comm. of Unsecured Creditors v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002) (stating that the
general pleading standard set forth under Rule 8(a) of the Federal Rules of Civil Procedure applies to
breach of fiduciary duty claims such as breaches of duties of care and loyalty).

allegations set forth in the Amended Complaint must also meet the heightened standard

for pleading fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  *See Rahl v.

Bande*, 328 B.R. 387, 412-14 (Bankr. S.D.N.Y. 2005) (stating that the heightened

pleading standard under Rule 9(b) applies to breach of fiduciary claims "when the breach

is premised on a defendant's fraudulent conduct" and applying Rule 9(b) to a breach of

fiduciary claim premised upon defendants' issuance of false financial statements, which

sounded in fraud); *see also In re Musicland Holding Corp.*, 398 B.R. at 773 (stating that

Rule 9(b) applies to a claim based on fraudulent conduct even if fraud is not an element

of the claim).

With respect to the first element of the claim, the Amended Complaint must

sufficiently allege that Grewal was acting as a fiduciary of the Debtor (and the creditors

by extension).[23]  The existence of a fiduciary relationship with a corporation may be

established by pleading that a defendant was an officer and/or director of a debtor.  *See

Stratton Oakmont, Inc.*, 234 B.R. at 329 (quoting *In re Princeton Indus., Inc.*, 39 B.R.

140, 142 (Bankr. S.D.N.Y. 1984)).  The Amended Complaint clearly states that Grewal

was the sole director of the Debtor.  *See* AC at ¶¶ 8, 19.  Therefore, the first element of

the claim has been sufficiently pleaded.

In order to plead sufficiently the second element of the breach of fiduciary duty

claim, the Amended Complaint must include enough factual matter to support the

---

[23] Whether a corporate director or officer's duty to creditors is fiduciary in nature is unsettled under
Colorado law; however, Colorado law clearly recognizes a cause of action against a director or officer in
cases where a director or officer has favored his or her interests over the creditors', such as the situation
alleged in the Amended Complaint.  *See Alexander v. Anstine*, 152 P.3d 497, 502-03 (Colo. 2007); *New
Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1369 (Colo. 1993) (stating that when "a corporation is
insolvent, its directors are deemed to be trustees for it *and for its creditors*" and stating that the duty owed
by the directors require that they "not transfer corporate property for their own benefit and, thus, defeat a
creditor's claim") (emphasis added).

allegation that Grewal breached such duty to the Debtor.  Because the alleged breach is premised upon fraudulent transfers, the Amended Complaint must plead factual details relating to such transfers with a level of particularity that meets the standard under Rule 9(b) of the Federal Rules of Civil Procedure.  In connection with the analysis of the intentional fraudulent transfer claims above it has been established that the Amended Complaint meets the relevant pleading standard; therefore, the Court finds that the second element of the claim has also been sufficiently alleged.

To plead adequately the third element of the claim, the Amended Complaint must include relevant facts supporting the assertion that the Debtor incurred damages.  In this regard, the Amended Complaint states that substantially all of the valuable assets of the Debtor were conveyed, leaving the Debtor with significant unsecured debt that it was unable to pay.  *See* AC at ¶ 10.  In further detail, the Amended Complaint specifies that the Debtor's ownership in the Domestic Subsidiaries and the Offshore Subsidiaries was transferred to various entities controlled by Grewal for inadequate consideration.  *See* AC at ¶¶ 19, 20.  While the allegations set forth in the Amended Complaint alone may not be sufficient for the purposes of pleading this element, the Court is entitled to read such allegations in conjunction with the Petition, upon which the Trustee relied in bringing suit, and the corporate resolution approving the relevant transfers, which is referenced in the Amended Complaint.  Despite asset valuations alleged to be in the range of hundreds of millions of dollars, ownership in the Offshore Subsidiaries was transferred to Alexi Holdings Limited for nominal consideration.  Further, a review of the Petition reveals that the Debtor was left for the most part with non-revenue generating assets such as idle and dormant oil wells following the transfers of the Domestic and Offshore Subsidiaries;

in fact, its operating income disappeared entirely after 2003.  Taken as a whole and

viewed in the light most favorable to the Trustee, the relevant parts of the Amended

Complaint, the Petition and the related corporate resolution sufficiently detail the

allegation that the Debtor suffered damages in the form of loss of valuable operating

assets.  *Cf. Rahl*, 328 B.R. at 418 (finding insufficiently pleaded a conclusory allegation

stating, without more detail, that "as a proximate result of the . . . [d]efendants' breaches .

. . of their fiduciary duties, [the plaintiff-corporation] has been damaged in an amount to

be proven at trial").  Given the foregoing, the Court finds the third element of the claim

for breach of fiduciary duty to have been adequately pleaded.

With respect to the fourth and last element of the claim, the Amended Complaint

must sufficiently allege that Grewal's breach of fiduciary duty caused the Debtor's loss

of the above-described operating assets.  As the sole director and shareholder of the

Debtor as well as all corporate Defendants, Grewal had the exclusive power to approve,

through board resolutions and otherwise, the alleged fraudulent transfers.  *See* AC at ¶¶ 8,

9, 13, 19.  As stated above, the alleged transfers deprived the Debtor of its most valuable

assets and left it unable to meet its liabilities.  *See also* AC at ¶ 22 (describing the post-

transfer plight of the Debtor).  Based on the foregoing allegations, the Court concludes

that the fourth element of the claim has also been sufficiently detailed.

Because each element of the Trustee's claim against Grewal for breach of

fiduciary duty has been alleged sufficiently, the Court hereby denies the Rule 12(b)(6)

motion to the extent it relates to this claim.  *Cf. Benedict*, 877 P.2d at 1369 (finding a

breach of fiduciary duty claim to be adequately pleaded based on plaintiff's allegations

(1) that defendants caused the debtor to make payments due thereto to another

44

corporation in which defendants were the sole shareholders, and (2) that such action was taken to defeat the claims of plaintiff).

*Turnover of Property*

The Code separates the concept of avoidance of a fraudulent transfer from the recovery of such a transfer. *See In re Teligent, Inc.*, 307 B.R. 744, 749 (Bankr. S.D.N.Y. 2004). Once the grounds for avoiding a transfer have been demonstrated, the Trustee faces the second hurdle of establishing a method of recovery under Section 550(a) of the Code through, *inter alia*, identifying the persons from whom recovery may be obtained. *See Stratton Oakmont, Inc.,* 234 B.R. at 312. Section 550(a) of the Code provides in relevant part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section. . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

Thus, recovery of an avoided transfer is available from (A) the initial transferees of the relevant property, (B) the subsequent transferees and (C) the entities for whose benefit the transfer was made. *See In re Teligent, Inc.,* 307 B.R. at 749; *Stratton Oakmont, Inc.*, 234 B.R. at 312.

In the present case, the initial transferee of the Debtor's ownership interest in the Offshore Subsidiaries has been identified as Alexi Holdings Limited in the corporate

45

resolution allegedly approving the relevant transfers. [24]  *See* Exhibit B, Reply of Randeep

S. Grewal, Grewal (Royalty) LLC, Alexi Holdings Limited, All Round Management

Limited, and Grewal Investments, Inc. to the Chapter 7 Trustee's Objection to

Defendants' Motions to Dismiss the Complaint, dated April 15, 2009.  Likewise, the

initial transferee of the Debtor's ownership interest in the Domestic Subsidiaries has been

identified as Grewal Investments, Inc. in the Amended Complaint.  *See* AC at ¶ 19.

Because the grounds for avoiding the relevant transfers have been sufficiently

pleaded, as discussed in prior sections of this opinion, and because the relevant initial

transferees have been identified, the Court concludes that the Trustee's turnover claim

under Section 550 of the Code has been stated adequately and declines to grant the

relevant Rule 12(b)(6) motions to the extent they relate to the turnover claim and to the

extent they have been brought against the alleged transferees and those Defendants who

face potential transferor liability by virtue of the veil piercing claim.[25]  *See Stratton*

---

[24] The Amended Complaint has also identified Green Dragon Gas as the subsequent transferee of the offshore mineral and natural rights previously owned by Alexi Holdings Limited through its interim ownership of the Offshore Subsidiaries.  *See* AC at ¶¶ 25, 26.  Because the Trustee has not named Green Dragon Gas as a defendant in the present case, the Court assumes that the Trustee intends to recover the transfer from Green Dragon Gas only if and after he brings a successful suit against Alexi Holdings Limited as the initial transferee.  *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 741-43 (suggesting that recovering a transfer from a subsequent transferee after a successful suit against the initial transferee is a permissible course of action under Section 550, while there is a split in the case law regarding the statutory permissibility of suing a subsequent transferee without first suing the relevant initial transferee).

[25] The Trustee asserts his turnover of property claim under Section 542 in addition to Section 550 of the Code.  Section 542 of the Code provides in relevant part as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Essentially Section 542(a) of the Code requires that entities in possession of property of a debtor's estate turn the applicable property over to the trustee.  *See In re Teligent, Inc.*, 307 B.R. at 751.
The elements of a Section 542 claim have been found to consist of the following: (1) during the bankruptcy case; (2) an entity other than a custodian; 3) was in possession, custody or control; 4) of

*Oakmont, Inc.*, 234 B.R. at 314 (finding that allegations specifying the identity of the defendant who received part of an alleged fraudulent transfer would have permitted a recovery pursuant to Section 550(a) from such defendant, which allegations were absent in the particular case).  Given the foregoing, the relevant motions to dismiss are denied with respect to Alexi Holdings Limited, Grewal Investments, Inc., All Round Management Limited and Grewal to the extent they relate to the turnover claim.

## CONCLUSION

For the reasons stated above, the Rule 12(b)(6) motion filed by counsel for Grewal, Alexi Holdings Limited and All Round Management is denied with respect to the corporate veil piercing claim against Grewal, Alexi Holdings Limited and All Round Management Limited and with respect to the breach of fiduciary claim against Grewal. All Rule 12(b)(6) motions are also denied with respect to the intentional and constructive fraudulent transfer claims under both the Code and the NYDCL, as well as the related turnover of property claim under the Code, against Grewal, Alexi Holdings Limited, All Round Management Limited and Grewal Investments, Inc.  The relevant Rule 12(b)(6) motions, however, are granted dismissing all intentional and constructive fraudulent transfer claims and the related turnover claim against Grecogas Limited, Greka Energy

---

property that the trustee could use, sell or lease; and 5) such property is not of inconsequential value or benefit to the estate.  *See In re Newgent Golf, Inc.*, 402 B.R. 424, 435 (Bankr. M.D. Florida).

With regard to the first and third elements, the Amended Complaint alleges that the Defendants received the transferred assets prior to the filing of the Petition and have not returned the assets as of the date of the Complaint, which is during the pendency of the bankruptcy case.  *See* AC at ¶¶ 19, 72. Although not expressly discussed, with regard to the second element there is no indication in the record that any of the alleged transferees are mere custodians of the assets, and none of the Defendants have made any such assertion.  With regard to the fourth and fifth elements of the claim, it may be implied from the significant valuation of the property owned by one or more of the transferred subsidiaries that the interests in the subsidiaries transferred by the Debtor may be of significant value and thus (A) constitute property that the Trustee could sell and (B) are not of inconsequential value or benefit to the estate.  *See* AC at ¶¶ 15, 17, 24 (providing valuations of property).

Given the foregoing, the Court finds in the alternative that the claim for turnover of property has been pleaded sufficiently under Section 542 of the Code.

International BV, Rincon Island Limited Partnership, Greka Oil & Gas, Inc., Santa Maria

Refining Company, Greka Integrated, Inc., Alexi Realty, Inc., Greka Investments, Inc.

and Grewal (Royalty) LLC.

The Trustee is to settle an order consistent with this opinion.


Dated: New York, New York
       September 18, 2009


                          **s/Arthur J. Gonzalez**
                          UNITED STATES BANKRUPTCY JUDGE